**EOD**
09/30/2020

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-42053 |
| | § | |
| CAROL ALISON RAMSAY ROSE, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| CAROL ROSE | § | |
| AND CAROL ROSE, INC., | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| | § | |
| VS. | § | ADV. PROC. NO. 17-4104 |
| | § | |
| LORI AARON, PHILLIP AARON, | § | |
| AARON RANCH, AND | § | |
| JAY MCLAUGHLIN | § | |
| | § | |
| Defendants/Counter-Plaintiffs. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the Court on the Attorney Fee Application [Adv. Proc. No. 17-4104, Doc. No. 224] by Hynds & Gordon, P.C. and Frost Brown Todd LLC as well as the Application for Allowance of Fees and Expenses [Bankruptcy Case No. 17-41053, Doc. No. 289] by the Ashmore Law Firm, P.C. and Sheppard Sands, as attorneys for the Defendants/Counter-Plaintiffs Lori Aaron, Phillip Aaron and Aaron Ranch (collectively, the "**Aarons**"). Carol Rose ("**Rose**") and Carol Rose, Inc. (collectively, the "**Rose Parties**") and Equis Equine, LLC and Elizabeth Weston (collectively, "**Weston**") object to the allowance of the amount requested in the applications. The Court conducted an evidentiary hearing on April 24, 2019 and, at the end of the hearing, took the applications under advisement in order to prepare a detailed written ruling.

1

## I.   BACKGROUND

### A.  State Court Litigation

The parties are familiar with the underlying dispute and the Court will not repeat all its prior findings.  In summary, and as relevant to the Aarons' fee applications, the underlying litigation began when Rose sued the Aarons in Texas state court on October 3, 2013 (the "**Aaron Ranch Lawsuit**").  In various iterations of her state court complaint, Rose sought between $2.6 million and $12.2 million in damages arising out of the Aarons' alleged breaches of contract[1] as well as the Aarons' alleged (1) fraudulent inducement to enter into an agreement with respect to certain horses; (2) fraudulent inducement to enter into a lease her horse ranch in Gainesville, Texas (the "**Gainesville Ranch**"); (3) invasion of solitude; and (4) defamation.  The Aarons filed counterclaims seeking between $5 million and $20 million in damages for (1) statutory fraud, common law fraud, and fraudulent misrepresentation; (2) breach of fiduciary duty; (3) invasion of privacy; (4) tortious interference with contracts and prospective business relations; (5) business disparagement; (6) specific performance and constructive trust; (7) trespass to real property; (8) breach of contract; (9) accounting; (10) declaratory judgment; (11) civil conspiracy; (12) violations of the Texas Theft Liability Act (the "**TTLA**"); and (13) equitable subrogation and constructive trust.

Two additional lawsuits were filed after the Aaron Ranch Lawsuit commenced.  The first was a lawsuit filed in state court on July 16, 2014 by Rose against her ex-horse trainer, Jay McLaughlin, who was later employed by the Aarons (the "**McLaughlin Lawsuit**").  That action

---

[1] Rose asserted that the Aarons breached their agreement to buy certain horses from her, lease her horse ranch, and retain her as a consultant by: (i) failing to pay lease payments; (ii) failing to pay for maintenance, repairs, and expenses; (iii) failing to provide and pay for board and training; (iv) failing to pay Rose a 10% commission on horse sales; (vi) failing to provide lifetime breeding rights to BLINDSIDED; (vii) failing to replace equipment; (viii) failing to pay taxes; (ix) failing to transfer utility accounts and pay utilities; (x) failing to secure, maintain and pay for insurance; (xi) failing to take reasonable action to aid Rose; and (xii) failing to pay for tack purchased at the dispersal sale.  The Aarons counterclaimed that Rose breached the parties' agreement by: (i) locking the Aarons out of the ranch, (ii) failing to provide the Aarons with a list of utilities; (iii) failing to properly train and care for A SHINER NAMED SUE; (iii) engaging in substantial competition with the Aarons; (iv) boarding an excessive number of horses at the ranch at the Aarons' expense; and (v) hiring employees with the approval of the Aarons.

2

was consolidated with the Aaron Ranch Lawsuit in state court on September 25, 2015. The second

lawsuit was filed in state court on August 7, 2015 by Weston against the Aarons, Rose, and others

(the "**Weston Lawsuit**"). Weston filed the lawsuit after unsuccessfully attempting to intervene in

the Aaron Ranch Lawsuit. In the Weston Lawsuit, Weston asserted claims against the Rose Parties

for (1) violations of Texas Business and Commerce Code § 2-328; (2) common law fraud,

fraudulent inducement, and fraud by nondisclosure; (3) negligence and negligent

misrepresentation; (4) violations of the TTLA, (5) violations of the Texas Deceptive Trade

Practices Act ("**TDTPA**"); and (6) conspiracy, aiding, and abetting.

The discovery process was contentious, especially with respect to the Aaron Ranch

Lawsuit, and went on for years in state court. The parties fought over depositions and the

production of documents, among other things, in various states where witnesses were located.

Many attorneys were involved in the litigation of the Aaron Ranch Lawsuit and the Weston

Lawsuit due to the amount of time that passed between the initiation of the litigation and trial, the

many different types of claims asserted by the parties, the many potential witnesses located in

different parts of the country, the fights over documents in different jurisdictions, and differing

areas of legal expertise. Rose and the Aarons each employed numerous lawyers and law firms

over the years.[2]

### B. Rose files for Bankruptcy

The Rose Parties filed for bankruptcy in September 2017. They removed all the pending

litigation to bankruptcy court on October 25, 2017, which commenced several adversary

proceedings. The Aarons and McLaughlin moved to remand the Rose Parties' lawsuits against

---

[2] The Rose Parties and the Aarons blame each other for the cost of the litigation. The Rose Parties complain that the Aarons spent most of their time on claims they ultimately lost and that were tangential to their successful breach of contract and TTLA claims. The Aarons complain that the Rose Parties initiated the litigation by filing multiple lawsuits and then drove up the costs through her litigation tactics. It appears to this Court that both parties are correct.

them back to state court.  The Rose Parties and Weston objected, arguing that the parties' claims against Rose were "core" claims against the bankruptcy estate that this Court would necessarily decide as part of the claims allowance process.  The Court denied the motions to abstain following a hearing on February 13, 2018.

Prior to the hearing on the motion to abstain, in January 2018, the Aarons, McLaughlin and Weston filed proof of their claims against the Rose Parties.  They stated that the amounts of their claims were unknown and attached materials relating to the state court litigation to their proofs of claim.  However, in their fourth amended answer and counterclaim, the Aarons sought a minimum of $5 million in damages, $15 million in exemplary damages, costs and reasonable attorneys' fees. The Rose Parties objected to the allowance of their bankruptcy claims.

The Court administratively consolidated the claim objections with the adversary proceedings for purposes of trial.  The parties agreed that this Court should try some, but not all, of the state law claims between the parties.[3]  Despite the (relatively) limited nature of the trial, the parties submitted a 92-page joint pre-trial order together with a 249-page exhibit list.  The Rose Parties included 368 exhibits on her original exhibit list, the Aarons included 762, and Weston included 592.

The Court tried the parties' claims and counterclaims over nine days in May and June 2018. Much of the trial was focused on the Aaron Ranch Lawsuit.  At the conclusion of trial, the Court invited the parties to submit proposed findings and conclusions for the Court's consideration as well as written closing arguments.  In addition, the Court scheduled a hearing on July 6, 2019, for

---

[3] This Court did not try any claims by non-debtors against non-debtors, such as Weston's claims for conspiracy and aiding and abetting against two auctioneers and an attorney who assisted Rose with the dispersal sale, among other things.  In addition, the Aarons withdrew their invasion of privacy claim as well as their business disparagement claim prior to trial.  Rose withdrew her invasion of solitude and defamation claims prior to trial, and Weston withdrew her TDTPA claim prior to trial.

oral closing arguments. The parties filed closing briefs and proposed findings on or before presenting their closing arguments on July 6, 2018.[4]

For the reasons explained in the Court's memorandum opinion entered on January 23, 2019 (and amended on September 27, 2019), the Rose Parties did not prevail on any of their claims against the Aarons. This Court found in favor of the Aarons on their claims for breach of contract, TTLA violations, and breach of fiduciary duty. With respect to breach of contract, the Court found that the parties intended a Confidential Term Sheet, Consulting Agreement, and Lease to "work as a single unified contract," and that Rose breached the agreement by locking the Aarons out of the Gainesville Ranch. The Court also found that Rose violated the TTLA by refusing to allow the Aarons to retrieve their horses from the Gainesville Ranch after the lockout until they paid the entire amount of a so-called "stableman's lien." And the Court found that Rose breached her fiduciary duties under the agreements prior to the lockout by deliberately attempting to sabotage the performance of Jay McLaughlin, who was at that time employed by the Aarons, at a competition. The Court found that the Aarons established damages for breach of contract in the amount of $1,109,000.00 and damages for TTLA violations in the amount of $61,257.32. The Court found that Rose's attempted sabotage of McLaughlin's performance was unsuccessful and that the Aarons had not established any damages as a result of Rose's breach of her fiduciary duty.[5]

The Aarons are seeking their attorneys' fees in connection with their breach of contract claim and their claim for TTLA violations. *See* TEX. CIV. PRAC. & REM. CODE §§ 38.001, 134.005.

---

[4] The parties' joint pre-trial order included a claim by the Aarons against Rose for "trespass to real property." In the joint pre-trial order, the Aarons asserted that Rose trespassed by locking them out of the Gainesville Ranch and denying them access to their horses and personal property. However, the Aarons did not address their trespass to real property claim in their post-trial briefing or closing arguments. The "trespass to real property" claim appears to have been an abandoned alternative to their breach of contract and TTLA claims.

[5] The Court's judgment liquidated the principal amount of the unsecured claims the Aarons asserted against the Rose Parties in their bankruptcy cases. The requested attorney's fees and costs would increase the total amount of the Aarons' unsecured claims and, potentially, alter the distributions under the Rose Parties' confirmed joint plan of reorganization.

They submitted two fee applications to this Court with supporting records that include more than 8,000 detailed time entries from the inception of litigation in October 2013 through July 2018.  As discussed below, the application from the Ashmore Law Firm, P.C. and Sheppard Sands ("**Ashmore**") seeks approximately $400,000 for legal services in pursuing the breach of contract claim plus approximately $20,000 incurred in connection with the prosecution of his fee application.  The joint application by Hynds & Gordon, P.C. ("**H&G**") and Frost Brown Todd LLC ("**FBT**") seeks approximately $3.1 million for legal services in connection with the breach of contract claim and the TTLA claim plus approximately $220,000 incurred in connection with the prosecution of their fee application.

### C.  The Original Fee Applications and Objections

According to the briefs and affidavits, the Aarons incurred the total sum of $4,319,097 in fees and costs billed by H&G and FBT through July 2018.  The Aarons separately incurred the total sum of $568,610 in fees and costs billed by Ashmore.  The Aarons have paid all or substantially all the fees and costs billed by their attorneys.

The fee applications describe how counsel arrived at the amounts requested in their applications.  Mr. Sands states in an affidavit in support of the Ashmore law firm's application that he personally reviewed all his firm's invoices.  The Ashmore law firm is not seeking recovery for $135,451.25 relating to fees that Mr. Sands determined are not recoverable under Texas law.  Mr. Sands states in his affidavit that the remainder of the entries, which total $410,479.25 for the period of October 1, 2013 through February 22, 2019, are so inextricably intertwined with the breach of contract and TTLA claims that they are 100% recoverable.  In addition, the Ashmore law firm seeks $22,479.45 for its fee litigation-related costs.

According to their affidavits in support of the joint H&G/FBT fee application, Mr. Don Gordon of H&G and Mr. Joel Turner of FBT worked together to review and evaluate approximately 7,302 entries by timekeepers at H&G/FBT from the inception of the litigation through July 2018. They assembled a team to review the entries to determine whether the entries related to a recoverable claim, appeared to relate in part to a recoverable claim, or related to a non-recoverable claim. Mr. Gordon and Mr. Turner performed a line-by-line review of the entries marked as fully recoverable or partially recoverable. Another attorney at FBT then reviewed all the paralegal time entries, litigation support entries, and administrative support entries to determine if the work captured in the entries was work traditionally done by an attorney.

The claims by and between the Rose Parties, McLaughlin, Weston, and the Aarons were litigated together in this Court and, to some extent, in state court. Many of the entries by the attorneys for the Aarons reflect this reality by including work relating to multiple claims in the same entry. Based on their review of the time entries and their knowledge of the elements of the claims asserted by the Aarons, Mr. Gordon and Mr. Turner determined that it was appropriate to discount the partially recoverable time entries by 20% to account for any services in those entries that advanced the non-recoverable claims. Thus, in their original fee application filed on February 22, 2019, H&G/FBT requested the total sum of $3,681,020.95, which included the following amounts:

**Attorney Fees ($2,981,969.04)**
Fully recoverable attorneys' fees: $2,048,989.68
Partially recoverable attorneys' fees: $932,979.36
**Paralegal Fees ($238,529.45)**
Fully recoverable paralegal fees: $46,456.60
Partially recoverable paralegal fees: $192,073.35
**Litigation Support Fees**
Partially recoverable litigation support fees: $44,816.94
**Costs and Expenses ($225,941.13)**
Recoverable costs and expenses for FBT: $80,059.91

Recoverable costs and expenses for H&G: $145,881.22

With respect to costs and expenses, Mr. Gordon and Mr. Turner explained in their affidavits in support of their fee application that several paralegals at FBT reviewed the entries. The paralegals eliminated items such as postage and shipping that are generally included in the firms' rate schedules. They identified entries that appeared recoverable as costs under 28 U.S.C. § 1920, and they evaluated whether such entries were connected to a recoverable claim. An attorney at FBT then conducted a "second pass" review to confirm whether all costs identified as recoverable were recoverable under Texas law. The total amount of $47,252.88 was identified as non-recoverable. With respect to the balance, the Aarons voluntarily reduced the total amount of their requested costs and fees by 20%, which is consistent with their treatment of attorney and paralegal time they identified as partially recoverable.

The Rose Parties and Weston object to the fees the Aarons requested for H&G/FBT and the Ashmore law firm. In general, the Rose Parties and Weston object that the requested fees are excessive, especially considering the amount of the judgment obtained. The Rose Parties and Weston also object that counsel for the Aarons failed to adequately separate their recoverable fees (relating to claims for breach of contract and violations of the TTLA) from their non-recoverable fees (relating to all their other claims). They also object to the inclusion of time spent pursuing a breach of fiduciary duty claim against Rose, which did not give rise to any right to attorneys' fees under Texas law.

The Rose Parties' 45-page objection, which includes 550 pages of attachments, seeks to eliminate most of the Aarons' requested recovery. The Rose Parties contend that the Aarons should recover "at most" $250,777 in fees and costs charged by the Ashmore law firm, H&G, and FBT. The Rose Parties arrive at this figure by characterizing most of the attorneys' fees as partially

recoverable and allowing an award of only 12% of each partially recoverable entry. Alternatively, the Rose Parties argue that this Court would reach approximately the same award by sustaining their specific objections to approximately 5,500 attorney and paralegal time entries.

The Rose Parties frequently object to the same entry on multiple grounds. Their objections to specific entries by H&G/FBT fall within one or more of the following thirteen categories:

(1) "completely unrecoverable" ($1,889,696.83), meaning that the Rose Parties believe the time entry is not related to the breach of contract or TTLA claims;

(1a) "partially unrecoverable" ($2,060,402.94), meaning that the Rose Parties believe some of the time entry is not related to the breach of contract or TTLA claims;

(2) "not segregated" ($2,077,771.19), meaning that the Rose Parties believe the time entry does not segregate between recoverable and unrecoverable time;

(3) "vague" ($2,189,912.71), meaning that the Rose Parties believe the time entry is too vague to permit a meaningful review;

(4) "block billed" ($2,672,340.02), meaning that the Rose Parties believe the time entry fails to indicate the time spent on discrete tasks within the entry;

(5) "billing judgment" ($388,337.65), meaning that the Rose Parties believe the time entry is excessive or duplicative of the entries of other timekeepers;

(6) "settled" ($998,599.52) meaning that the Rose Parties believe the time entry relates to a particular matter that the parties agree was settled;

(7) "billing error" ($24,985.50), meaning that the Rose Parties believe the fee or cost is an exact duplicate of another;

(8) "travel expenses" ($208,626.04), meaning that the Rose Parties believe the Aarons are seeking attorney's fees for non-working travel time;

(9) "unrecoverable – bankruptcy fee" ($322,328.10), meaning that the Rose Parties believe the time was spent prosecuting non-dischargeability;

(10) "unrecoverable – Weston Fee" ($1,095,367.34), meaning that the Rose Parties believe the time was spent defending against Weston's claims;

(11) "unrecoverable – McLaughlin" ($681,759.04), meaning that the Rose Parties believe the time was spend defending Jay McLaughlin from the Rose Parties' claims and prosecuting McLaughlin's claims against the Rose Parties; and

(12) "internal conferences" ($1,684,078.84), meaning that the Rose Parties believe the fees request duplicate fees for internal conferences.

The Rose Parties use the same categories of objections with respect to the Ashmore law firm's fee application. The Ashmore law firm's application included more than 1100 attorney time entries. Like their objections to the H&G/FBT application, the Rose Parties object to many of the

entries on multiple grounds. Their specific objections to the entries in the Ashmore law firm's application fall within the following categories:

(1) "completely unrecoverable" (713 entries totaling $143,142.25);
(1a) "partially unrecoverable" (397 entries totaling $267,327.50);
(2) "not segregated" (409 entries totaling $273,658.75);
(3) "vague" (569 entries totaling $360,332.50);
(4) "block billed" (490 entries totaling $363,588.75);
(5) "billing judgment" (180 entries totaling $11,175);
(6) "settled" (50 entries totaling $37,075);
(7) "billing error" (none);
(8) "travel expenses" (6 entries totaling $13,125);
(9) "unrecoverable – bankruptcy fee" (6 entries totaling $1762.50);
(10) "unrecoverable – Weston fee" (44 entries totaling $28,138.75);
(11) "unrecoverable – McLaughlin" (16 entries totaling $12,181.25); and
(12) "internal conferences" (64 entries totaling $55,537.50).

In addition to their objections to the attorney time entries, the Rose Parties object that H&G/FBT failed to provide information supporting the rates charged by H&G/FBT paralegals. The Rose Parties raise multiple objections to most of the 761 time entries by H&G/FBT paralegals – primarily that the entries should have been designated as unrecoverable or only partially recoverable, were not segregated, were vague, and were block-billed. The total amount of time billed by paralegals was $280,598.80 and, according to the Rose Parties, only $22,631.56 was recoverable.

The Rose Parties and Weston object to the Aarons' request for an award that includes non-paralegal, support staff work. They pointed to numerous examples in the invoices where fees were incurred for mere clerical work such as assembling documents and preparing facsimiles. In their reply to the objection, the Aarons responded that such fees were permissible under Texas law because the work was performed under the direction and supervision of an attorney.

In addition to joining the Rose Parties' objections, Weston generally objects that the requested fees for H&G/FBT reflect over-staffing, over-working and an inefficient handling of the

10

case.  Weston objects that the invoices from H&G/FBT include fees for mere clerical work, such as "work on copying produced documents," as opposed to substantive legal work.  Weston also objects to the inclusion of fees and costs charged by H&G/FBT relating to the Aarons' breach of fiduciary duty claim.  With respect to the requested fees for the Ashmore law firm, Weston objects that Mr. Sands did not explain his segregation methodology.  Finally, with respect to both fee applications, Weston objects to the inclusion of time spent segregating the Aarons' legal fees and preparing the fee applications.

### D.  Amendments to the Joint Application by H&G and FBT

The Aarons filed a reply in support of their fee applications on April 19, 2019.  The Aarons acknowledged that 65 timekeepers (including attorneys, paralegals, and litigation support staff) assisted the Aarons at some point over a five-year period but pointed out that 24 of those timekeepers billed less than 7 hours over that period and that only 16 expended more than 80 hours over that period.  Further, the Aarons contended that time incurred by attorneys working collaboratively together is recoverable and does not constitute inefficiency or overstaffing.  However, the Aarons amended – and reduced – the requested fees of H&G/FBT in response to some of the objections by eliminating certain duplicate time entries, removing certain entries for time spent on matters that all parties agree are non-recoverable, such as time spent on the claims by and against McLaughlin, and applying an across-the-board 5% "billing judgment" reduction.

Mr. Gordon explained these changes in a supplemental affidavit filed on April 19, 2019.  With respect to billing judgment, he pointed out that many of the invoices for H&G, FBT and the Ashmore law firm contain time entries for which the charge was reduced to zero and the Aarons were not charged.  In addition, as a show of good faith, he stated in his supplemental affidavit that

the Aarons agreed to apply a 5% "billing judgment" discount to the application for an award of
H&G/FBT's fees.

Mr. Gordon also addressed the Rose Parties' "travel expenses" objection in his
supplemental affidavit. In their objection to the fee application, the Rose Parties identify 57 entries
by time keepers at H&G/FBT, for a total of $166,442.89, that they allege improperly bill for travel
time. Mr. Gordon explained that, after the April 24th hearing, each time keeper reviewed the entries
and identified the time spent solely on travel versus the time spend providing legal services.
Following review, the timekeepers determined that 166 hours ($57,977.44) constituted travel time
and 355.7 hours ($108,512) constituted non-travel time. Thus, Mr. Gordon explained that the
Aarons agreed that a deduction representing 50% of the travel time billed was warranted and
reduced their requested recovery by $28,988.72.

### E. The Hearing on the Fee Applications

The Court conducted a hearing on the fee applications on April 24, 2019. At the hearing,
Mr. Gordon of H&G disputed the contention that the requested applications reflected over-staffing
and an inefficient handling of the case. He explained that he actively represented the Aarons in
the early stages of the litigation and remained the primary client contact. The Ashmore law firm
and Mr. Sands assisted with paper discovery, and Joel Turner of FBT provided expertise in equine
law. Mr. Gordon explained that these roles blurred over time as the litigation progressed. FBT
often took the lead on preparing briefs and motions while Mr. Gordon made courtroom
appearances and attended depositions.

Only two attorneys at the Ashmore law firm billed the Aarons, and their rate was $300 an
hour. H&G/FBT employed numerous attorneys and paralegals at a variety of rates. However, at
the hearing on the fee applications, counsel represented to the Court that the blended rate for the

12

H&G/FBT attorneys was approximately $305 an hour.[6]  The Rose Parties and Weston do not object to the reasonableness of the Ashmore and H&G/FBT attorney rates in the Dallas market.  The Rose Parties and Weston withdrew their objections to the time billed by paralegal staff after receiving additional information from the Aarons' counsel.

At the conclusion of the hearing, the Court invited the Aarons to file responses to the specific objections to their fee applications.  On May 6, 2019, the Ashmore law firm responded to the Rose Parties' objections to its requested fees by filing a "position statement."  In its statement, the Ashmore law firm argued that the Rose Parties are objecting to non-recoverable fees that Ashmore is not seeking to recover.  The Ashmore law firm stated that Mr. Sands extracted non-recoverable fees from the application, as previously discussed, and that the firm is seeking only fees for services that advanced the breach of contract and TTLA claims.  The Ashmore law firm did not respond to the other, specific objections by the Rose Parties and Weston.

Mr. Gordon filed a second supplemental affidavit on May 6, 2019 and an amended second supplemental affidavit on May 7, 2019.  In his second supplemental affidavit, as amended, Mr. Gordon addressed the objections by the Rose Parties and Weston regarding segregation, specifically, their objection that time spent by H&G/FBT on the breach of fiduciary duty claim should have been segregated as non-recoverable.  Mr. Gordon explained that, after the April 24th hearing, he and Mr. Turner once again reviewed the fees and costs billed by H&G/FBT.  On this pass, they reviewed the entries that had been previously marked as either fully or partially recoverable and determined whether the work related to the breach of contract or TTLA claims or whether the work was necessary to pursue those claims.

---

[6] Counsel further represented that the blended rate for paralegals was approximately $180.

The additional, post-hearing review of the fees and costs billed by H&G/FBT and the Ashmore law firm resulted in additional reductions and reallocations. The Aarons did not reduce their request for the attorneys' fees charged by the Ashmore law firm, but they did reduce their request for the Ashmore law firm's costs from $22,479.45 to $13,763 by eliminating charges for experts, postage/shipping, and travel expenses. In their revised requested for the fees and expenses of H&G/FBT, the Aarons are seeking the total amount of $3,112,928.38, which includes the following amounts:

> **Attorney Fees ($2,321,275.59)**
> Fully recoverable attorneys' fees: $1,836,853.36
> Partially recoverable attorneys' fees: $1,058,161.70
> 50% travel time reduction ($428,988.72)
> 5% billing judgment ($144,750.75)
> **Paralegal Fees ($211,468.33)**
> Fully recoverable paralegal fees: $0
> Partially recoverable paralegal fees: $222,598.24
> 5% billing judgment ($11,129.91)
> **Litigation Support Fees ($84,216.46)**
> Fully recoverable litigation support fees: $0
> Partially recoverable litigation support fees: $88,648.80
> 5% billing judgment: ($4,432.34)
> **Costs and Expenses ($180,184.47)**
> Recoverable costs and expenses for FBT: $88,648.80
> 5% billing judgment ($4,432.44)
> Recoverable costs and expenses for H&G: $102,365.98
> 5% billing judgment ($6,397.87)

## F. The Supplemental Fee Applications

On July 26, 2019, the Aarons filed a supplemental request for the fees they had incurred to establish an award of attorneys' fees and costs against the Rose Parties. The supplemental request covers the attorneys' fees incurred from January 23, 2019 to May 31, 2019. The Aarons voluntarily reduced the fees charged by H&G/FBT with a 26% reduction of attorney time (amounting to $77,523.00). The Aarons are not seeking reimbursement for any of the paralegal time or litigation support associated with the fee application, which amounts to a reduction of

14

approximately $12,000.00, or any of the costs, which amounts to a reduction of $4,293.45. With all these reductions, the Aarons request a recovery of $221,447.22 in fees incurred and billed by H&G/FBT as part of the fee application process.

The Aarons also seek to recover the fees charged by the Ashmore law firm in connection with the preparation and prosecution of its fee application. Mr. Sands filed a supplemental affidavit relating to the fees the firm charged the Aarons from January 1, 2019 through May 16, 2019. Mr. Sands stated that he had personally spent 110.75 hours at 300 an hour (for a total charge of $33,225) segregating and preparing the attorney fee and expense request. The Aarons, however, are requesting recovery of only $18,495.63 of this amount as well as $1,125 in paralegal fees charged by the Ashmore law firm.

The Rose Parties sought to strike the supplemental fee applications as untimely. The Court conducted a hearing on the motion to strike on August 13, 2019. Following the hearing on August 15, 2019, the Court entered an order denying the motion to strike. Rose filed an objection to the supplemental applications on August 26, 2019, contending that the Aarons should recover no more than $30,500 for time spent litigating the fee requests.

## II.    LEGAL STANDARD

Under the "American Rule," each party pays its own attorney's fees arising out of litigation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975). An exception exists, however, when a specific authority granted by statute or contract—a "fee shifting" provision—states otherwise. *Id.* at 263. The default rule can be overcome by contract or statute. *See Travelers Cas. And Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007).

In this case, the Aarons prevailed on their breach of contract and TTLA claims, and they successfully defended themselves from Rose's breach of contract claim. The Aarons assert entitlement to an award of the attorney's fees they incurred in connection with the breach of contract claims under Texas Civil Practice and Remedies Code § 38.001(8). Under § 38.001(8), "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). The Aarons also assert an entitlement to attorneys' fees and costs incurred in connection with their TTLA claim under Texas Civil Practice and Remedies Code § 134.005(b). Under § 134.005(b), "[e]ach person who prevails in a suit under this chapter shall be awarded costs and reasonable and necessary attorney's fees."

Attorney's fees and costs are related issues. However, each requires a different analysis. The Court will address each in turn.

## III.   ATTORNEYS' FEES

Because the Aarons prevailed on state law claims, Texas law applies in determining the reasonableness of the requested attorneys' fees. *See, e.g., In re Kirk*, 525 B.R. 325, 335 (Bankr. W.D. Tex. 2015). Texas courts, like federal trial courts within the Fifth Circuit, apply the lodestar method to calculate reasonable attorney's fees under statutes that involve fee-shifting provisions.[7] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019). The

---

[7] The lodestar method is essentially a short-hand version of the factors set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). In *Arthur Anderson*, the Texas Supreme Court outlined a factor-based method to assess reasonable and necessary attorney's fees. Those factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Id.*

16

lodestar first requires the trial court to determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id.* The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. *Id.* The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* (*citing El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)).

General, conclusory testimony devoid of any real substance will not support a fee award. Instead, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. *Id.* at 501-502. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. Although billing records are not required, they are "strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.*

Here, counsel for the Aarons kept detailed, contemporaneous time records. They provided the Rose Parties, Weston, and the Court with copies of their time records, which consist of more than 5,500 entries by individual timekeepers. The records of H&G and FBT contained minimal redactions; the Ashmore law firm's records were more heavily redacted. The Rose Parties analyzed all the time records in detail and raised thousands of objections to individual entries and charges. Weston likewise raised objections to the Aarons' calculation of recoverable attorneys' fees and costs as well as the reasonableness of the requested award.

In determining a reasonable fee award, as set forth above, courts exclude all time that is excessive, duplicative, or inadequately documented. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Courts that find hours are too high may make line-item cuts or "use 'a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous.' " *Tow v. Speer*, 2015 WL 12765414, at *6 (S.D. Tex. Aug. 17, 2015) (quoting *Compass Bank v. 288/59 GP LLC*, 2011 WL 739341, at *2 (S.D. Tex. Feb. 23, 2011)). An hour-by-hour analysis contemplates that a judge can "feasibly and expeditiously engage in such a precise review." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). If "fee documentation is voluminous," an hour-by-hour review may be "impractical" and "a waste of judicial resources." *Id. See also, e.g., Hopwood v. State of Tex.,* 236 F.3d 256, 279 (5th Cir. 2000) (Fifth Circuit concluded that district court did not abuse its discretion by ordering a flat, twenty-five percent reduction to attorney's hours because it was impractical for the court to wade through hundreds of time entries). If reducing by a percentage, a court must articulate the reason for selecting the percentage. *Loranger*, 10 F.3d. at 783. However, a court may not "double discount" by, for example, reducing hours through an hour-by-hour analysis and then including those hours in an across-the-board cut. *Bivins v. Wrap it Up*, 548 F.3d 1348, 1351-52 (11th Cir. 2008).

In this case, the appropriate hourly rate is not at issue. However, the reasonableness of the time spent is the subject of dispute. The Aarons are seeking an award for more than 15,000 hours of work performed by professionals in this adversary proceeding. The voluminous fee documentation includes thousands of individual time entries and tens of thousands of objections to individual entries, making an entry-by-entry, hour-by-hour, objection-by-objection review

impractical.  It would be neither an efficient use of judicial resources nor feasible for this Court to attempt to review thousands of time entries and to analyze the multiple objections to each entry. The Court conducted its own review of the evidence presented at the April 24th fee application hearing, including the time records submitted by the Aarons.  The following factors inform the Court's decision regarding the reasonableness of the fees requested.

### A. Segregation of Fees

A party seeking to recover attorneys' fees has the burden to show that the fees were reasonable and necessary, which, among other things, requires the party to show the fees were incurred on a claim that allows recovery of such fees. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991).  When legal services advance claims for which the recovery of fees is permitted as well as claims for which the recovery of fees is not permitted, the party must segregate and exclude the fees for services related to the claims for which fees are not recoverable unless "the discrete legal services advance[d] both [the] recoverable claim and the unrecoverable claim." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).  *See also Petras v. Criswell*, 248 S.W.3d 471, 481 (Tex. App. – Dallas 2008, no pet.).  The need to segregate fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo*, 212 S.W.3d at 312–13.

Segregation of fees does not require separate time records for each claim. *Tony Gullo*, 212 S.W.3d at 314.  Instead, an opinion assigning a percentage to recoverable and unrecoverable fees may be sufficient. *Id.*  The parties in this case disagree about how much of the time spent by counsel for the Aarons is unrecoverable.  The Aarons contend that the Ashmore law firm has removed any unrecoverable time entries and that the balance, $410,472.25, is fully recoverable. With respect to HG/FBT, the Aarons contend that $1,836,853.36 in attorneys' fees is fully

19

recoverable, and the balance, $1,322,702.70, is recoverable with a reduction of 20% for time unrelated to the TTLA and breach of contract claims ($1,058,161.70). The Rose Parties argue that nearly all of the time spent by counsel for the Aarons is only partially recoverable and should be reduced by 88% to account for time spent on matters unrelated to the breach of contract and TTLA claims.

The Rose Parties' objections fall into two general categories. First, the Rose Parties object that some of the Aarons' attorneys' fees are not recoverable at all because they did not advance Weston's TTLA claim and breach of contract claims, as they characterize those claims. Second, the Rose Parties object that most of the Aarons' attorneys' fees are only partially recoverable because they did not specifically advance the TTLA and breach of contract claims and, further, that counsel's time on mixed issues was only 12% attributable to the TTLA and breach of contract claims. The Court will address the Rose Parties' characterization of the TTLA and breach of contract claims first.

### 1. Fees Based on Breach of Contract

The Rose Parties object that many of the time entries are completely unrecoverable because the entries did not specifically involve the Aarons' claim that Rose breached the Lease of the Gainesville Ranch. The Rose Parties assert that the Aarons prevailed only on their breach of the Lease claim. Thus, according to the Rose Parties, the Aarons were required to segregate fees incurred to prosecute claims based on the other two agreements (the Consulting Agreement concerning Rose's conduct and remuneration as a consultant and the Confidential Term Sheet concerning the pre-auction purchase of horses by the Aarons).

As this Court explained in its memorandum opinion and at the hearing on April 24, 2019, the Lease was one part of a unified agreement that included the Confidential Term Sheet, the

Consulting Agreement, and the Lease Agreement.  The parties executed these three written Agreements at the same time and "intended for them to work together as a single, unified instrument."  (*See* Memorandum Opinion (Amended) at p. 59).  The Rose Parties' objection that any time spent on the breach of any portion of the agreement other than the Lease is unrecoverable misreads the Court's prior memorandum opinion.  Moreover, with respect to the Aarons' different allegations of breach of contract, segregation based on separate theories of the same cause of action is not necessary.  *See, e.g., Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*, 234 S.W.3d 814, 829 (Tex. App. – Dallas 2007) (rejecting the argument that the fee claimant was required to segregate the fees expended in pursuing its various claims for breach of contract).

The Rose Parties also object to the inclusion of any time counsel for the Aarons spent defending the Aarons from the Rose Parties' claims for breach of contract.  The Rose Parties argument is premised on their reading of the Court's prior memorandum opinion – that is, the Rose Parties argue that time spent defending against the Rose Parties' breach of contract claim is only recoverable if it advanced the Aarons' claim for breach of the Lease.  The Rose Parties breach of contract claims against the Aarons, in fact, paralleled the Aarons' breach of contract claims against the Rose Parties and involved all three contracts that formed part of their unified agreement.  While a defendant generally is not entitled to attorney's fees for a successful defense of a breach of contract action, there is "an exception to that general rule where the matters encompassed by a claim and a counterclaim are indistinguishable, where they arose from the same transactions, where the same facts required to prosecute the claim are required to defend against the counterclaim; under these circumstances, attorney's fees are appropriate."  *McNeil v. BMC Software Inc*., 306 F. App'x 889, 895 (5th Cir. 2009) (citing *De La Rosa v. Kaples,* 812 S.W.2d 432, 434 (Tex. App. – San Antonio 1991, writ denied), *overruled on other grounds*, *Green Int'l,*

*Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997)).  *Accord Veale v. Rose*, 657 S.W.2d 834, 841 (Tex.

App. – Corpus Christi-Edinburg, 1983) ("Basically, the same facts on which the appellants based

their affirmative defenses to [plaintiff's] suit formed the basis of their counterclaim.  Therefore,

[plaintiff's] counsel, by necessity, spent no more time in preparation to defend against the

counterclaim than was necessary to meet appellant's defenses to the primary lawsuit.  The two

actions are so interrelated that no distinction between the prosecution of [plaintiff's] claim and the

defense of the counterclaim is necessary."); *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.,* 177

S.W.3d 537, 551 (Tex. App. – Dallas 2005, no pet.) (*De La Rosa* "permits recovery of attorney's

fees for defense of a claim when (1) a party is entitled to attorney's fees for the prosecution of a

claim and (2) the claim and counterclaim are so interrelated that segregation of fees incurred in

prosecution of the claim and defense of the counterclaim is not necessary.").

Finally, the Rose Parties object that the original application for an award of attorneys' fees

claimed as fully recoverable numerous entries relating to the Aarons' breach of fiduciary duty

claim, which is distinct from a breach of contract claim and does not give rise to a right to

attorney's fees under Texas law.  The Rose Parties argue that *Tony Gullo* only allows parties to

recover fees for a claim only if the discrete legal services advanced the claims on which they

prevailed and for which fees are recoverable.  *Tony Gullo*, 212 S.W.3d 229 ("To the extent such

services would have been incurred on a recoverable claim alone, they are not disallowed simply

because they do a double service.").  The Aarons initially defended the inclusion of time spent on

breach of fiduciary duty but ultimately conceded this argument.  The Aarons amended their

requested award for the time billed by H&G/FBT, as discussed above, either to exclude time spent

on the breach of fiduciary duty claim or to include it as only partially recoverable.

## 2.  Fees Based on the TTLA

At trial, the Aarons contended that the Rose Parties committed "theft" and were liable for damages under § 134.003(a) of the TTLA by (1) locking them out of the Gainesville Ranch, and (2) extracting money from them in the guise of a stableman's lien in order to recover their horses from the Gainesville Ranch after the lockout.   Under the TTLA, "'[t]heft' means unlawfully appropriating property or unlawfully obtaining services" as described in several provisions of the Texas Penal Code.   The Aarons did not identify the relevant provision of the Penal Code in the parties' joint pre-trial order, but the Court inferred that the Aarons were relying on § 31.03, which criminalizes the unlawful appropriation of property, as it was the only provision of the Penal Code applicable to their claim of "theft."   The Court found the Aarons established that the Rose Parties violated the TTLA and § 31.03(a) of the Texas Penal Code by depriving them of their horses but the Aarons failed to establish that locking them out of the Gainesville Ranch was a violation of the TTLA or § 31.03(a).

The Rose Parties' objections to the Aarons' request for fees relating to their TTLA claim are premised on their contention that the Aarons asserted multiple "claims" for theft under the TTLA.   Since the Aarons did not prevail on all their claims, according to the Rose Parties, the Rose Parties argue that they were also a prevailing party and that, at a minimum, the Aarons' attorney's fees should be reduced.   Texas courts have held that both a plaintiff successfully prosecuting a theft suit and a defendant successfully defending against one can be considered prevailing parties under the TTLA. *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App. – Houston [1st Dist.] 2014, no pet.) (recognizing that "[c]ourts have held that the phrase 'prevailing party' in section 134.005(b) of the TTLA includes both a plaintiff successfully

prosecuting a theft suit and a defendant successfully defending against one" and analyzing effect of dismissal of plaintiff's claim on defendant's status as "prevailing party").

In *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 642–43 (Tex. App. – Dallas 2016), an employer claimed a former employee committed theft by unlawfully appropriating property as described by § 31.03 of the Penal Code. In particular, the employer asserted that its former employee wrongfully retained certain commissions and wrongfully used the employer's confidential information without permission. The employer sought to recover the commissions as well as damages arising from the unauthorized use of its confidential information. The employer succeeded on its claim that its former employee wrongfully retained commissions.

On appeal, the court rejected the employee's argument that her former employer had asserted two distinct claims against her and that she had "prevailed" by successfully defending against one of the claims. *Id.* At 642. "The fact that Brinson prevailed in recovering one set of damages, but not another, does not convert Brinson's suit for theft into two separate claims." *Id.* "What is clear is that Brinson obtained a finding … on its theft claim." *Id.* at 643. To hold that the TTLA requires courts "to assess who is the prevailing party on each damage theory asserted within a theory of recovery … would invite ceaseless, wasteful litigation over how many elements of a claim or damage theory can be imagined." *Id.*

While distinguishing between a "claim" and a "theory" can be difficult, in this case, the Aarons asserted different ways in which the Rose Parties were liable for "theft" under § 134.003(a) of the TTLA and § 31.03 of the Texas Penal Code. The allegations stated a single claim for "theft" under the TTLA with different categories of damages – specifically, damages from the lockout and damages from refusing to return certain horses to the Aarons until the Aarons paid the Rose

Parties a so-called stableman's lien.  As in *Hooper*, the fact that the Aarons failed to establish all their contentions does not make Rose a "prevailing party" under the TTLA.[8]

### 3.   Allocation Between Recoverable and Non-Recoverable Fees

Next, the Rose Parties object to the number of entries the Aarons describe as fully recoverable and the rate at which the Aarons propose to reduce the entries they identify as partially recoverable.  The parties agree that segregation of fees does not require separate time records for each claim, as previously discussed, and an opinion assigning a percentage to recoverable and unrecoverable fees may be sufficient.  *See Tony Gullo*, 212 S.W.3d at 314.  Thus, in this case, counsel for H&G/FBT opined in the affidavits supporting the fee request that approximately two-thirds of H&G/FBT's time is fully recoverable, one-third is partially recoverable, and the partially recoverable entries are 80% recoverable.  The Rose Parties suggest an alternate percentage, specifically, that partially recoverable entries should be only 12% recoverable and 88% non-recoverable.

Counsel for the Rose Parties explained at the hearing on April 24, 2019 that the 12% figure is based on her calculation of the total number of claims asserted by the Aarons and the total number that were successful.  The Rose Parties' calculation appears to overstate the number of claims asserted by the Aarons.  In any event, the Rose Parties' mechanical creation of the 12% recoverable figure based on claims won/claims asserted is not consistent with Texas law nor does it account for the overlapping nature of the Aarons' claims.

On the other hand, the Court disagrees, based on its review of the evidence, on its experience, and on the Court's knowledge of this case, that two-thirds of the work by H&G/FBT

---

[8] The case Rose cites to support her argument, *Bacon Thomas, Ltd. v. Christos Energy, Inc.*, 2016 WL 4217254 (Tex. App. – Houston [1st Dist. Aug. 9, 2016], involved a defendant that was awarded its fees after the plaintiff non-suited its TTLA claim in order to avoid an unfavorable ruling.  *Bacon Thomas* is factually and legally distinguishable from the present case.

specifically advanced the TTLA and breach of contract claims and that 80% of H&G/FBT's work on mixed issues would have been necessary even if they had only asserted their breach of contract and TTLA claims.  The Aarons' assertion fails to account for the relatively narrow nature of their successful claims, or the other disputes involved in the litigation amongst the parties.  This Court found that Rose breached the parties' agreement by locking them out of the Gainesville Ranch and then violated the TTLA by refusing to allow the Aarons to retrieve their horses from the Gainesville Ranch until they paid the entire amount of a "stableman's lien."  Time spent on the valuation of the horses the Aarons bought from Rose, Rose's temperament, the conduct of the auction (some of which related to Weston's claim), Rose's attempt to sabotage McLaughlin's performance at a competition, and Rose's alleged attempts to interfere with the Aarons' business, to name a few examples, may have advanced the Aarons' claim for breach of fiduciary duty or one of their other claims but did not advance the Aarons' successful claims for breach of contract and violations of the TTLA.

With respect to the Ashmore law firm, the Aarons did not explain its segregation methodology.  No one testified for the Ashmore law firm at the hearing on April 24, 2019, and the Aarons did not respond in substance to any of the Rose Parties' objections to the Ashmore law firm's application.  While Mr. Sands stated in an affidavit that he removed time entries that he believed to be unrecoverable, the Aarons failed to establish to this Court that the balance of the fees billed by the Ashmore law firm are entirely recoverable based on intertwined facts.  A review of his time entries reflects that he was deeply involved in discovery issues on all of the Aarons' claims.

**B.  Other Objections to Attorneys' Fees**

The Court now turns to the specific objections raised by the Rose Parties and Weston to individual time entries in the original fee application.  As previously discussed, the Rose Parties frequently object to specific time entries on multiple grounds.  The Rose Parties contend that these specific objections support her proposed percentage reductions for non-recoverable fees inasmuch as the Court would arrive at approximately the same fee award she proposes if the Court sustained all the Rose Parties' objections.  The Court agrees, as discussed below, that some of these factors support a reduction of the requested fees.

**1.  "Settled" Objection**

The Aarons are not seeking to recover for time or costs relating to a settled dispute over the Aarons' purchase of certain horses from Rose.  However, the Rose Parties object that 709 entries "involved" the settled matter and should be reduced to zero or only partially recoverable. The Rose Parties' objections do not identify whether the work described in the entries would have been necessary even if the settled matters had not been included in the lawsuit.  The Court concludes that the Aarons are entitled to recover for the challenged time entries, which appear to this Court to have dealt with or discussed settlement where the matter was relevant to claims on which the Aarons prevailed at trial.

**2.  "Travel Time" Objection**

The Rose Parties object to 68 attorney time entries and one paralegal entry as including unrecoverable travel time.  Many jurisdictions permit attorneys to recover fees for travel time, although most, including Texas, have not permitted a full recovery.  *Wilkerson v. Atascosa Wildlife Supply*, 307 S.W.3d 357, 358 (Tex. App. – San Antonio 2009) (collecting authority).  In *Wilkerson*, for example, an attorney spent 40 hours traveling on case related matters, and he was awarded his

fees for 4 hours he spent actively working on the case as a passenger as well as half of his fees for the 36 hours he spent driving.  *Id.*

Here, the 68 attorney entries comprised more than 500 hours for a total of $195,020.04 billed.  The one paralegal entry was for the total amount of $481.  After reviewing the Rose Parties' objection, each timekeeper reviewed each  entry and, based upon the existing narrative, identified the amount of time spent solely on traveling versus the time spent providing legal services. Following review, the timekeepers determined that 166 hours constituted travel time ($57,977.44) and 355.7 hours constituted non-travel time ($108,512).   The Aarons, therefore, voluntarily reduced their requested recovery by $28,988.72 (which is 50% of $57,977.44).   The Court concludes that the Aarons are entitled to recover for the challenged time entries, as modified and reduced in response to the Rose Parties' objection.

### 3.  "Billing Error" Objection

The Rose Parties identified 22 attorney time entries in the H&G/FBT fee application as having "billing errors."  However, the Aarons' invoices reflect that many of these entries were, in fact, written off and reduced to zero before the fees were submitted to the Aarons to account for unproductive, excessive and redundant billing.   These entries also were not included in the H&G/FBT fee application.   Further, some of the entries designated by the Rose Parties as duplicates are not, in fact, duplicates.  The Court concludes that the "billing error" objection should be overruled.

### 4.  "Weston" and "McLaughlin" Objections

The Rose Parties identify 690 entries that mentioned "Weston" and 384 entries that mentioned "Mclaughlin" in the H&G/FBT application.   They assert that 355 of the "Weston" entries and 126 of the "McLaughlin" entries are completely unrecoverable and that the remainder

are only partially recoverable.  With respect to the application of the Ashmore law firm, the Rose

Parties identify 44 entries that mention "Weston" and 16 entries that mention "McLaughlin."

Based on the Court's review of the Rose Parties' objections, the Rose Parties appear to assert that

these entries by the Ashmore law firm are almost entirely unrecoverable.

Ashmore did not respond in substance to the Rose Parties' objection.  H&G/FBT respond

that, to the extent McLaughlin was referenced, McLaughlin was an employee of Rose and an

important witness with respect to the Aarons' breach of contract claim.  H&G/FBT also respond

that, to the extent Weston is referenced, Weston was a witness to Rose's breaches of the parties'

agreement and testified at trial about the conduct of Rose and Lewis Stevens prior to and during

the auction.

H&G/FBT are not seeking to recover for time spent prosecuting McLaughlin's claim

against Rose, and they removed those entries from their requested award.  Ashmore was not

involved in the representation of McLaughlin.  The mentions of McLaughlin in the records of

H&G/FBT appear to arise from his importance as an employee of the Rose Parties who witnessed

events relating to the breach of contract claim.  Weston's testimony, in contrast, related to the

auction and Rose's potential breaches of her fiduciary duty to the Aarons; Weston was not a

witness with respect to the successful breach of contract or TTLA claims.  Although the mere

presence of Weston's name in a block-billed time entry does not justify the complete disallowance

of the entry, some reduction is warranted.

### 5.  "Vague" and "Block Billed" Objections

The Rose Parties and Weston both object to the use of "block billing" by counsel for the

Aarons.  Many of approximately 2,100 attorney and paralegal time entries the Rose Parties object

to as block billed they also object to as "vague" because they could not precisely determine how

much time was spent on particular tasks. The Rose Parties seek an across-the board reduction of the requested fees based on block billing, citing to cases that reduced fees by 10-40%. *See, e.g., Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *3-4 (N.D. Tex. Feb. 11, 2011) (applying a 10% reduction where daily entries were block-billed); *Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227, at *9, 11 (N.D. Tex. Sept. 21, 2004) (applying 40% reduction for block billing where entries were month to month).

The term "block billing" refers to the "'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Glass v. United States,* 335 F.Supp.2d 736, 739 (N.D. Tex. 2004) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1534 n. 15 (10th Cir. 1996)). The Aarons do not dispute that their counsel engaged in block billing; FBT, H&G and the Ashmore law firm itemized their tasks, providing detail as to the various types of work performed on a particular day, but they did not itemize time on a per-task basis. Because FBT, H&G and the Ashmore law firm engaged in block billing, the Court must next decide whether this warrants a percentage reduction in the fee applications.

Block billing is not *per se* improper under Texas law, so long as the entries provide meaningful review and are detailed enough to provide some indication of the time spent on various parts of the case. *See State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 100 (Tex. App. — Houston [14th Dist.] 2016, no pet.) (citing *John Moore Servs., Inc.* 2016 WL 3162206, at *6-7); *FinServ Casualty Corp. v. Transamerica Life Ins*., 523 S.W.3d 129, 142 (Tex. App. — Houston [14th Dist.] 2016) (noting "monthly billing statements that included the type of service provided, the name of the attorney providing the service, the date the service was performed, the hourly rate, and how much time the work required… was sufficiently detailed to allow for meaningful review."). While

attorneys need not "write a book to describe in excruciating detail the professional services rendered for each hour or fraction of an hour to merit a fee award," *Amlin Corporate Member, Ltd. v. Logistics Group Intern., Inc.*, 2011 WL 3271335, at *5 (S.D. Tex. 2011), some detail about the nature of the work is required. *See El Apple,* 370 S.W.3d at 762. A "block-billing technique" is "distinguishable from *El Apple,* in which there was far less evidence of attorney's fees, and it was presented in a far more summary fashion"[9] and "distinguishable from the aggregate and conclusory time estimates provided in *Montano*"[10] because entries "describe the work that was done, specify the date the work was done, provide the total amount of time spent accomplishing the tasks, and identify the person who did the work." *John Moore Servs.,* 2016 WL 3162206, at *6. Therefore, before reducing the requested fees based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended.

Here, the time entries by attorneys and paralegals included details about the nature of the work, who did it at what rate, what day the work was performed, and the time worked. *See El Apple,* 370 S.W.3d at 762. The entries were typically detailed enough to provide some indication of the time spent on various parts of the case. For example, an entry by Mr. Gordon on July 27, 2015 for two hours, which the Aarons claim is partially recoverable, states: "Review correspondence from Ms. Aaron re discussion with Brewster; review file and prepare response to Ms. Aaron and Mr. Gordon; review correspondence from Mr. Shook re Clark documents; review Clark documents." In many instances, including this one, the time entry, or surrounding time-

---

[9] In *El Apple,* an affidavit in support of the application for attorney's fees included the aggregate number of hours worked by each of two attorneys, 700 hours and 190 hours, without any supporting evidence. *El Apple,* 370 S.W.3d at 759.

[10] In *Montano*, the attorney estimated that he spent six hours per week for 226 weeks working on the case, for an aggregate of 1,356 hours. *Montano,* 414 S.W.3d at 736. !

entries, provides some context but not necessarily enough to determine if all the time advanced the

TTLA and breach of contract claims claim.  Some examples of vague entries are (1) an entry by

Mr. Sands on October 3, 2013 for 4.3 hours stating "work on client issues and analyze client issues.

Multiple telephone conferences"; (2) an entry by Mr. Sands on December 30, 2013 for .15 hours

stating "telephone call from Co-Counsel regarding REDACTED. Prepared email forwarding draft.

REDACTED"; and (3) an entry by Mr. Gordon for 2 hours on 5/7/15 for "REDACTED."  The

Court finds that the time entries of H&G/FBT and the Ashmore law firm are adequate to enable a

determination of the reasonableness of the hours expended in some instances but not in many

others.  The Court, therefore, finds that this factor supports a downward adjustment.

### 6. "Bankruptcy Post-Petition Fees" Objection

The Rose Parties contend that the Aarons may not recover their attorneys' fees or costs

incurred in connection with core bankruptcy matters (such as preparing proofs of claim) or to

litigate dischargeability.[11]  The Rose Parties object to 373 attorney time entries and 49 paralegal

entries, for the total billed amount of $319,877.60, as including "Unrecoverable Bankruptcy"

work.  For 296 of the attorney time entries, they determined the time entry was 0% recoverable.

For the remaining 77, they determined that the time entries were only 12% recoverable.

With respect to an action by a creditor seeking a judgment of non-dischargeability, there is

no statutory basis in the Bankruptcy Code for an award of costs and fees to a successful creditor.

"Since the Bankruptcy Code does not address whether creditors can recover attorney's fees in non-

dischargeability cases, they can only do so if allowed by another statute or by contract."

*Schwertner Backhoe Servs., Inc. v. Kirk (In re Kirk)*, 525 B.R. 325, 330 (Bankr. W.D. Tex. 2015)

---

[11] The Aarons sought a judgment of non-dischargability based on fraud and fiduciary fraud, *see* 11 U.S.C. § 523(a)(2) and (4), in a separate adversary complaint.  The Court effectively abated the matter while it liquidated the Aarons' claims against Rose.  After the Court entered its memorandum opinion rejecting the Aarons' fraud claims, the parties agreed to dismiss the non-dischargeability proceeding.

(footnote omitted). Indeed, the Fifth Circuit has held that creditors can recover attorneys' fees if there is a contractual or statutory right to fees under state law. *See In re Jordan,* 927 F.2d at 226-27; *Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1285–86 (5th Cir. 1992). *Williams v. Hantla (In re Hantla)*, 2011 WL 1355867, at *4–5 (Bankr. N.D. Tex. Mar. 28, 2011) (awarding reasonable and necessary attorney's fees pursuant to violations of the TTLA and finding such fees non-dischargeable under § 523(a)(4) and(a)(6)).

Here, the Aarons sought a judgment of non-dischargability based on fraud and fiduciary fraud, *see* 11 U.S.C. § 523(a)(2) and (4), in a separate adversary complaint. The Court effectively abated the matter while it liquidated the Aarons' claims against Rose. After the Court entered its memorandum opinion rejecting the Aarons' fraud claims, the parties agreed to dismiss the non-dischargeability proceeding.

Thus, the Aarons failed to obtain a judgment that Rose's debt to them is non-dischargeable. Moreover, even a cursory review of the challenged entries reveals that the requested bankruptcy-related fees are not limited to time spent liquidating the breach of contract and TTLA claims. The entries include time their counsel spent preparing notices of appearance, reviewing the notices of removal of the state court proceedings to bankruptcy courts, preparing and attending the meeting of creditors under 11 U.S.C. § 341, preparing motions to abstain, preparing motions to remand, preparing proofs of claim, researching dischargeability, etc. The time spent on these purely bankruptcy-related matters are not recoverable, but due to counsel's practice of block-billing, it is not possible to precisely determine how much time counsel spent. The Court, therefore, finds that some reduction to the requested award is warranted.

7.   **Objection to Litigation Support and Paralegal Fees**

In their original application, the Aarons sought an award that included $44,817.94 in "litigation support fees" (less a 5% billing judgment reduction) and $238,529.95 for paralegal charges.  Counsel for the Aarons asserted that they reviewed all the time entries and are only seeking recovery for those that relate to the breach of contract or TTLA claim and only if the work could be considered substantive legal work.  In their affidavits in support of the fee requests, Mr. Gordon and Mr. Turner declared that the paralegals and support staff member are qualified through education, training and work experience to perform substantive legal work.  They further declared that any substantive legal work they performed was done under the direction of an attorney.

Weston and the Rose Parties objected to the inclusion of "litigation support fees" and paralegal fees that appeared clerical in nature.  Under Texas law, "[a] party may separately assess and include in the award of attorneys' fees compensation for a legal assistant's work, if that assistant performs work traditionally done by an attorney." *Multi-Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App. – Dallas, 1990, writ den.).  Work performed by legal assistants if only recoverable if the evidence establishes: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.  *Id*. The party seeking such fees bears the burden to establish these factors.  *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App. – Fort Worth, 1997, no pet.).

In this case, the Aarons submitted copies of the time records kept by attorneys and staff at H&G/FBT.  These records include approximately 1,000 billing entries by paralegals, project assistants, litigation support staff, and interns.  The Aarons provided the qualifications of their

34

paralegals and support staff, and counsel has declared that "any substantive legal work" was performed under the direction of an attorney. However, Weston and the Rose Parties object that the invoices are rife with entries that did not involve substantive legal work; mere clerical work is not recoverable under Texas law. *See Clary*, 949 S.W.2d at 469.

In response to the objections by the Rose Parties and Weston, the Aarons amended their request. They are now seeking an award of $211,468.33 for paralegal charges and $84,216.46 for litigation support charges. These figures reflect a 5% billing judgment discount as well as a 20% reduction for segregation.

Having reviewed the billing records, the Court finds that the requested charges for litigation support staff should be almost entirely eliminated. A review of the billing entries by non-paralegals reveals dozens of entries that simply state "work on evidence," "work on evidentiary documents," and "work on phone log." While some of the entries appear to have legal substance, such as an entry on November 4, 2016 that states "preparation of response to Plaintiff's 7th Request for Production," many of the billing entries by non-paralegals appear clerical in nature. Other billing entries appear unrelated to the Aarons' successful breach of contract and TTLA claims (or their successful defense of Rose's breach of contract claim against them), such as an entry on February 4, 2016 that states "receipt and review Rose's response to Motion to Enforce Mental Capacity Evaluation."

The Court further finds that the requested charges for paralegals should be reduced. A review of the billing entries by paralegals reveals that paralegals spent many hours "processing" documents and e-mails for internal files and databases. Paralegals spent many hours reviewing phone records and charting the contacts between various "players" in the dispute between the Rose Parties and the Aarons. Paralegals also spent many hours examining, reviewing and summarizing

depositions of individuals who were not relevant to the Aarons' successful breach of contract and

TTLA claims (or their successful defense of the Rose Parties' breach of contract claim against

them), such as Matt Humphries and Courtney Radliff, who played only a bit part, if that, at trial.

### 8. "Billing Judgment" and "Internal Conferences" Objections

The Rose Parties and Weston object to the requested fees as so large that they reflect over-

staffing, over-working, and an inefficient handling of the case.  The Rose Parties specifically object

to 214 attorney time and 234 paralegal time entries as lacking "Billing Judgment."  According to

the Rose Parties, 135 of the attorney entries are 0% recoverable; and 79 are 12% recoverable.[12]  In

addition, the Rose Parties object to a total of 1,483 attorney time entries and 64 paralegal time

entries as including unrecoverable fees relating to "Internal Conferences."  For 827 of the attorney

entries, she contends the time entry is 0% recoverable.

A party seeking recovery of fees must show that its counsel exercised "billing judgment."

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012).  "Billing judgment requires

documentation of the hours charged and of the hours written off as unproductive, excessive, or

redundant."  *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  When a

party fails to supply such proof, the proper remedy is a "reduction of the award by a percentage

intended to substitute for the exercise of billing judgment."  *Id.*  As the U.S. Supreme Court has

explained, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's

*adversary* pursuant to statutory authority."  *Hensley v. Eckerhart*, 461 U.S. 424, at 434, (quoting

*Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).

In determining whether the time spent on a matter constitutes a reasonable number of hours,

the Court pays attention to whether cases are overstaffed and whether the hours expended were

---

[12] In many instances, Rose also objects to those same time entries for "Not Segregated," "Block Billed," or
"Internal Conferences," thus muddling the basis of the Rose Parties' challenge to the individual entries.

excessive, redundant, and unnecessary. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013) (hours that are "excessive, redundant, or otherwise unnecessary" are hours that are not "reasonably expended"). However, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Thus, "there is no requirement ... that district courts identify and justify each disallowed hour." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citation omitted). "Nor is there any requirement that district courts announce what hours are permitted for each legal task." *Id.*

Here, the applications of H&G/FBT and the Ashmore law firm all contain hours that were written off without charge. In response to the objections of the Rose Parties and Weston, the Aarons agreed to an additional 5% across-the-board reduction of the requested fees for H&G/FBT to pre-emptively address any perceived lack of "billing judgment." The Rose Parties and Weston seek a far more significant (but unspecified) reduction, citing to the sheer number of timekeepers involved in this protracted litigation.

Multiple attorneys may be needed in complex litigation. S*ee Champion v. ADT Sec. Services, Inc.*, 2010 WL 4736908, at *7 (E.D. Tex. 2010) ("having several attorneys on the case was reasonable because a [the] action is a complex type of a civil action."). The outright denial of 135 entries by attorneys at H&G/FBT, as requested by the Rose Parties, based on alleged "billing judgment" error would be inappropriate. "If the movant fails to demonstrate billing judgment, the court should not deny fees, but should reduce the award by a percentage to substitute for the exercise of billing judgment and eliminate hours that were not reasonably expended." *Prospect*

*Energy Corp. v. Dallas Gas Partners, LP*, 2011 WL 5864292, at *2 (S.D. Tex. 2011). Likewise, the Rose Parties' request to eliminate 827 entries by attorneys at HG/FBT for "internal conferences" would go too far by eliminating the entirety of the fee rather than reducing the fee to eliminate any duplication. As the Aarons point out, there is no legal prohibition to litigating a case using a collaborative approach, and co-counsel may be reasonably expected to confer for a certain number of hours. *See Turner v. Oxford Management Services*, 552 F.Supp.2d 648 (S.D. Tex. 2008) ("work allocation between [the attorneys] was appropriate … The Court also finds that most of Tomlinson's contributions to this litigation—performed as a highly compensated, experienced partner—were reasonable, valuable, and necessary.").

At bottom, the Court must determine whether the roughly 12,500 hours billed by the Aarons' counsel, plus the time spent by paralegal staff, is reasonable for a breach of contract claim and a TTLA claim. It is not. After considering the Aarons' justifications and the objections of Rose and Weston, the Court concludes that the number of hours billed was unreasonably high with respect to the claims on which they prevailed. The hours expended were excessive, and, in many instances, documented too vaguely as a result of block-billing and redactions. Further, the Aarons are seeking to recover for time their counsel spent on bankruptcy matters that did not advance their breach of contract and TTLA claims.

As the Fifth Circuit has recognized, the larger the ratio between the judgment sought and recovered and the fees requested, the more unreasonable the fees. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998). This accords with Texas law. It is well settled that attorneys' fees must "have some reasonable relationship to the amount in controversy[.]" *Giles v. Cardenas*, 697 S.W.2d 422, 429 (Tex. App. — Austin 1985, writ ref'd n.r.e.). If a prevailing party

unreasonably "overprepared" (or overreached) in a case, the losing party "should not be held liable for attorney's fees due to overpreparing." *Id.* at 430.

The Aarons employed more than 70 timekeepers, 58 of which were attorneys, who billed over 12,500 hours for legal services. The Aarons sought a judgment of as much as $20 million for all their claims, nearly twenty times the $1.1 million damages awarded, but they succeeded on only two of approximately one dozen legal claims against the Rose Parties. Their requested fees and costs – even when voluntarily reduced to $3,112,928.38 for H&G/FBT and $432,959.20 in response to the objections of the Rose Parties and Weston – amount to more than three times the damages awarded. This factor warrants a downward adjustment to the requested fees.

## C. Conclusion Regarding Fee Request

Given the vast differences of opinion as to the reasonableness of the Aarons' fees, the Court conducted its own review of the fees requested. The Court is also an expert on reasonableness of fees and may use its own experience in deciding a fee award. *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App. – Houston [1st Dist.] 2004, no pet.);*Aquila Sw. Pipeline, Inc. v. Harmony Expl., Inc.*, 48 S.W.3d 225, 241 (Tex. App. – San Antonio 2001, pet. denied); *Matthiessen v. Schaefer*, 897 S.W.2d 825, 827 (Tex. App. – San Antonio 1994), *rev'd on other grounds*, 915 S.W.2d 479 (Tex. 1995)); *see also Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) (citations omitted). Based on its review of the time records, its experience, and its knowledge of this case, the Court finds and concludes that 60% of all of the work by H&G/FBT and Ashmore was necessary and reasonable to advance the breach of contract and TTLAs claim and, as such, a 40% reduction is a reasonable and a proper allocation in this case. The Aarons have incurred a total of $3,989,418 in fees from H&G/FBT and an additional

$545,931[13] in fees from the Ashmore law firm.  Thus, the Aarons are awarded 60% of all fees incurred, which is equal to $2,721,209.40 in fees.  In reaching this conclusion, the Court considered the nature and scope of the TTLA and breach of contract claims upon which the Aarons prevailed, voluntary reductions taken, the billing rates, hours expended, the amount involved, the results obtained, the hours expended, the lack of segregation, and the skill of the Aarons' counsel as well as the specific objections raised by the Rose Parties and Weston.  While some of these factors support a downward adjustment, as discussed above, those adjustments are accounted for by the 40% reduction for non-recoverable fees, and any further reduction would be an impermissible double discount.  *See Bivins v. Wrap it Up*, 548 F.3d at 1351-52.

## IV.    Costs and Expenses

!       In their original application, the Aarons sought to recover $248,620.32 in costs and out-of-pocket expenses incurred in connection with litigating their breach of contract and TTLA claims.  Weston objected to the costs and expenses charged by H&G/FBT (in the total amount of $225,941.13) and the Ashmore law firm (in the total amount of $22,679.19), arguing that TEX. CIV. PRAC. & REM. CODE § 38.001 only allows the recovery of "costs," which are generally limited by Texas law to court fees, and similarly, TTLA § 134.005(b) only allows the recovery of "court costs," which do not include general litigation expenses.  The Rose Parties object to most of the costs and expenses charged by the Aarons' counsel as falling outside of 28 U.S.C. § 1920 and, more generally, object that not all the costs were necessarily incurred as a result of the breach of contract and TTLA claims.

The prevailing party in a suit under the TTLA is entitled to court costs and reasonable and necessary attorney's fees.  TEX. CIV. PRAC. & REM. CODE § 134.005(B).  When bankruptcy courts

---

[13] The fees requested for services performed by the Ashmore law firm in the amount of $410,479.75 reflects a voluntary discount of $135,451.25.  Therefore, the total incurred by the Aarons includes the sum of the two amounts.

40

liquidate claims under the TTLA state law governs the recoverable court costs. *See, e.g., In re Kakal*, 2019 WL 2895980, at *3 (Bankr. S.D. Tex. Jul. 2, 2019) (awarding court costs recoverable under Texas law to a prevailing party under the TTLA in a non-dischargeability action). In contrast, when bankruptcy courts merely declare a state court judgment non-dischargeable, the allowance of costs is governed by Federal Rule of Bankruptcy Procedure 7054(b) and 28 U.S.C. § 1920.[14] *See, e.g., In re Healey*, 2018 WL 4808362 (Bankr. E.D. Tex. Oct. 2, 2018) (awarding costs recoverable under 28 U.S.C. § 1920 in an action seeking a declaration that a state court judgment awarding damages and attorney's fees under the TTLA was non-dischargeable).

"Costs" is narrowly defined by Texas statutes as including the following:

> (1) fees of the clerk and service fees due the county; (2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit; (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and (4) such other costs and fees as may be permitted by these rules and state statutes.

TEX. CIV. PRAC. & REM. CODE § 31.007. In general, Texas law restricts "costs" to the "fees and charges required by law to be paid to the courts . . . for example, filing and service fees." *May v. Ticor Title Ins*., 422 S.W.3d 93, 106 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE § 31.007(b). "The expense of taking depositions is an item of court costs and properly chargeable as such." *Nolte v. Flournoy*, 348 S.W.3d 262, 271 (Tex. App. –

---

[14] Bankruptcy Rule 7054(b)(1) provides that "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Section 1920 defines the "costs" as:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Whether something was "necessarily obtained for use in the case is a factual determination to be made by the district court." *Fogelman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Prevailing parties bear the burden of establishing necessity. *Id.*

Texarkana 2011) (quoting *Wallace v. Briggs,* 162 Tex. 485, 348 S.W.2d 523, 527 (Tex. 1961)).

Expenses related to expert witness fees are not recoverable costs. *Ma*y, 422 S.W.3d at 106.  *See*

*also Bundren v. Holly Oaks Townhomes Ass'*n, 347 S.W.3d 421, 440 (Tex. App.—Dallas 2011,

pet. denied) ("The general rule in Texas is that expert witness fees are not recoverable as costs of

litigation.").  Further, general litigation expenses such as the cost of copies are not recoverable as

attorney fees to a prevailing party under Texas law.[15]  *In re Mud King Products, Inc.*, 525 B.R. 43,

61 (Bankr. S.D. Tex. 2015).  *See also Gumpert v. ABF Freight Sys., Inc.*, 312 S.W.3d 237, 242

(Tex. App. – Dallas 2010) (the costs of videotaping depositions and obtaining copies of deposition

transcripts "are ordinary expenses of prosecuting or defending a lawsuit for which there is no

recovery authorized by statute or rule.").

In this case, the Aarons initially defended their requested award of costs and expenses.  The

original costs and expenses that H&G/FBT charged to the Aarons included: $27,204.99 for copies;

$53,505.52 for depositions; $25,128.91 for video depositions; $56,638.98 for experts; $24,403.78

for e-discovery; and $28,305.14 for travel.  After the hearing on April 24th, in response to the

objections by the Rose Parties and Weston, the Aarons reduced their requested award for the costs

and expenses charged by H&G/FBT to $95,969.10.  This figure reflects a 20% reduction for

segregation and a 5% reduction for billing judgment.  Counsel asserts in a supporting affidavit that

he reviewed all H&G/FBT's costs and expenses to determine what related to a recoverable claim

and what could be awarded under Texas law.  Counsel further states: "Here, due to the complexity

of this matter, the Aarons had to take numerous depositions, each of which was expected to be

used for trial preparation or at trial, rather than merely for discovery purposes."

---

[15] Similarly, when seeking an award of costs under 28 U.S.C. § 1920, it is incumbent upon the party seeking the
recovery of costs to show that the deposition transcripts were "necessarily obtained for use in the case."  *See J.T.
Gibbons v. Crawford Fitting Co.,* 760 F.2d 613, 615 (5th Cir. 1985); *Studiengesellschaft Kohle,* 713 F.2d at 134.

Thus, after further review and additional reductions, the Aarons are requesting an award of costs in the total amount of $107,601.60, which includes $84,922.31 for costs charged by H&G/FBT and $22,679.19 in costs charged by the Ashmore law firm. Taking into account the other reductions the Aarons have voluntarily made, the Court finds that the costs should be reduced by an additional 30% (from $107,601.60 56 to $75,321.05) to segregate between time spent on recoverable and non-recoverable claims for the same reasons the Court reduced the requested award of fees.

## V. "Fees for Fees" Objection

The Aarons request an award of $221,447.22 for the reasonable and necessary fees incurred by H&G/FBT as part of the fee application process. The Aarons also request an award of $18,495.63 for the reasonable and necessary fees charged by the Ashmore law firm as part of the fee application process. While the Bankruptcy Code permits compensation for such services for professionals employed by the debtor, *see* 11 U.S.C. § 330(a)(6), that is not the applicable standard. Rather, because the Aarons are seeking an award of their fees under Texas law (for their breach of contract and TTLA claims), Texas law governs their fee applications. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002); *In re Pirani*, 579 B.R. 396, 410 (Bankr. E.D. Tex. 2017).

In August 2019, the Rose Parties filed an objection to the supplemental fee application, raising a litany of objections. The Rose Parties object that unsecured creditors may not recover their fees under the Bankruptcy Code. The Rose Parties also object that the fees were unreasonable, unnecessary and excessive. The Rose Parties complain that some of the time was spent correcting legal errors in the original application. The Rose Parties complain that the supplemental fees are disproportional to the results obtained and that the records reflect overbilling and inefficiency. The Rose Parties argue that a reasonable hourly rate is $300 and that it should

43

have taken counsel no more than 45 hours to research and prepare the original application and an additional 55 hours to respond to the objections by the Rose Parties and Weston, for a total award of no more than $30,500.

Texas courts permit a prevailing party to recover for time spent in pursuit of attorney's fees. *See, e.g., Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 146 (Tex. App. – Dallas 2011) (allowing fees incurred proving attorney's fees on remand as part of the prevailing party's remedy); *Santos v. Texas Enterprises, Inc.*, 2010 WL 4054479, at *4 (Tex. App. – Austin, Oct. 15, 2010) (rejecting the argument that fees incurred in the pursuit of fees are not reasonable under § 38.001); *Doncaster v. Hernaiz,* 161 S.W.3d 594, 606-07 (Tex. App. – San Antonio 2005, no pet.) (affirming reasonableness of attorney's fee award under § 38.001, which included time spent for bench trial on attorney's fees); *City of Dallas v. Arnett,* 762 S.W.2d 942, 946 (Tex. App. – Dallas 1988, writ denied) (affirming $225,000.00 attorney's fee award under § 38.001, which included time spent for trial on attorney's fees).  The pursuit in this case required H&G/FBT to respond to numerous global objections as well as thousands of objections to individual entries. However, as the Rose Parties point out, at least some of H&G/FBT's time was spent to correct its own errors (such as time spent removing or re-categorizing entries relating to the breach of fiduciary duty claim).

The Aarons have exercised billing judgment inasmuch as they are not seeking an award for H&G/FBT's paralegal time (in the amount of approximately $12,000) or the costs and expenses charged by H&G/FBT ($4,293.45) in connection with the fee application.  Counsel for the Aarons also voluntarily applied "billing judgment" reductions on a line-by-line bases to eliminate any alleged unproductive, excessive, or redundant hours, which resulted in an overall reduction of 26% for attorneys' fees.  In light of these voluntary reductions, period of time covered by the fee

application, the intensity of the litigation, the massive number of time entries to review, and the massive number of objections raised by the Rose Parties, the Court finds and concludes that the attorneys' fees the Aarons seek in connection with their fee application are reasonable, and no further reduction is warranted.

## CONCLUSION

For all these reasons, the Court concludes that that 60% of the attorney and paralegal total fees charged by H&G/FBT and the Ashmore law firm were reasonable and necessary and advanced the Aarons' claims for breach of contract and violation of the TTLA. The Aarons have established reasonable and necessary attorneys' fees in the amount of $2,961,152.25. This includes $2,615,098.02 for H&G/FBT ($3,989,418 multiplied by 60% plus $221,447.22) and $346,054.23 ($545,931 multiplied by 60% plus $18,495.63) for the Ashmore firm. In addition, the Aarons have established reasonable and necessary court costs in the total amount of $75,321.05.

**IT IS THEREFORE ORDERED** that the Attorney Fee Application [Adv. Proc. No. 17-4104, Doc. No. 224] by Hynds & Gordon, P.C. and Frost Brown Todd LLC, the Application for Allowance of Fees and Expenses [Bankruptcy Case No. 17-41053, Doc. No. 289] by the Ashmore Law Firm, P.C., the Supplemental Attorneys' Fee Application Requesting Fees Incurred to Establish their Attorney Fee Award [Adv. Proc. No. 17-4104] by Hynds & Gordon, P.C. and Frost Brown Todd LLC, and the Application for Allowance of Fees and Expenses of the Ashmore Law Firm, P.C. [Bankruptcy Case No. 17-41053, Doc. No. 289] are **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Weston is awarded reasonable and necessary attorneys' fees in the amount of $2,961,152.25 plus reasonable and necessary court costs in the total amount of $75,321.05 pursuant to Texas Civil Practices and Remedies Code §§ 38.001(8) and 134.005.

Signed on 9/30/2020

*Brenda T. Rhoades*   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

45